* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford, with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the plaintiff and the defendant Creative Builders at the time of the alleged injury.
3. Key Risk Insurance Company was the carrier on the risk, and coverage was in effect at the time of the alleged injury.
4. The parties entered no stipulations regarding the plaintiff's average weekly wage at the time of the alleged injury.
5. The plaintiff contends that he suffered a compensable injury by accident on or about September 19, 2004. The defendants deny liability for the plaintiff's current complaints of injury.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was 39 years of age at the time of hearing before the Deputy Commissioner. Almost all of his work experience has been in carpentry, as the plaintiff testified that he has worked in that field for about 21 years.
2. In September 2002, the plaintiff was working for the defendant Creative Builders, a company owned by Dewey Rickman, earning roughly $500 to $600 per week. During his employment with Creative Builders, the plaintiff worked in his side business with a friend Brad Underwood, performing roofing jobs for various people.
3. Prior to his employment with Creative Builders, the plaintiff sustained an injury to his lower back while working for another employer. On May 16, 2001, the plaintiff fell approximately eight feet from a ladder. He was treated at Annie Penn Hospital, where he was diagnosed with low back pain. X-rays at that time did not reveal any fractures or subluxation, but they did reveal early degenerative disc disease. The plaintiff was excused from work for two days, and advised to work with restrictions for the next five days.
4. On September 19, 2002, the plaintiff and owner Dewey Rickman were working with trusses on top of a one-story building. The trusses were held together by braces. The plaintiff was instructed to loosen the bracing, and when he did, the trusses fell. The plaintiff was knocked down onto the top of a wall, and pinned under the trusses. The defendants do not deny that this accident occurred, but deny the extent of the alleged injury.
5. The plaintiff was transported to Moses Cone Memorial Hospital by ambulance immediately after the accident, and Dr. Robert Gray examined him. He complained of right hip, right leg (tibia), lower back, and chest pain. X-rays taken of the plaintiff's tibia/fibula, pelvis, lumbar spine, and chest were all normal. The plaintiff was diagnosed with a contusion of his chest and released to return to work without restrictions as of September 24, 2002.
6. The plaintiff returned to work the next day and continued to work for Creative Builders until late April or early May 2003. During this period of time, the plaintiff continued to perform roofing side jobs. By spring 2003, the plaintiff had so many side jobs that he was missing work with the defendant-employer and in early May, the plaintiff told owner Dewey Rickman that he needed to take time off to complete his roofing side jobs. After 2 or 3 weeks, Mr. Rickman called the plaintiff about coming back to work, but the plaintiff said he was too busy with his roofing side jobs. The plaintiff never returned to work for Creative Builders.
7. The plaintiff did not seek any medical treatment for his back until May 26, 2003. During the intervening months, he had done extensive roofing work, independent of his employment with the defendant-employer. On May 26, 2003, the plaintiff visited Morehead Memorial Hospital with complaints of mid back pain that he "has had for a long time," which had become worse during the previous week. Dr. Okafor Lekwuwa diagnosed the plaintiff with an acute exacerbation of chronic back pain, prescribed Toradol and Ultracet, and instructed him to follow up with his family doctor.
8. The plaintiff visited his family doctor, Dr. William McGough, at Belmont Medical Associates on June 3, 2003. He complained of low back pain that he had experienced for two weeks. Dr. McGough diagnosed a lumbar strain, prescribed Tylenol and Flexeril, and referred the plaintiff for an MRI of his lumbosacral spine. The MRI, performed on June 9, 2003, at Annie Penn Hospital, revealed the following: degenerative disc disease and spondylosis at L4-5 and L5-S1 with broad-based disc bulges at both levels, eccentric L4-5 to the right paracentral location and eccentric L5-S1 to the left paracentral location; a disc abutting the left S1 nerve root; L5-S1 with mild left neural foraminal narrowing; and the disc bulge at L4-5 was noted to possibly abut both L5 nerve roots.
9. When the plaintiff returned to Dr. McGough's office on June 24, 2003, a physical examination revealed that he was tender in the lumbosacral spine region. Dr. McGough suspected a herniated disc and referred the plaintiff to a neurosurgeon, Dr. Henry Pool. The plaintiff continued to treat with Dr. McGough on several additional occasions between July and November 2003, with complaints of ongoing back pain.
10. On December 16, 2003, the plaintiff was examined by Dr. Henry Pool of Carolina Neurosurgery. He complained of marked low back pain with radiation into his left hip and intermittent left lower extremity radicular symptoms. The plaintiff told Dr. Pool of the accident in September 2002, and further misrepresented to Dr. Pool that his pain had been quite debilitating to the point that he had been unable to work steadily since that time. Dr. Pool was not aware that the plaintiff had continued to work in construction, and was doing roofing for the prior 14 months.
11. Dr. Pool reviewed the plaintiff's MRI, which demonstrated evidence of significant degenerative disc disease with some degree of annular tearing at the L4-5 and L5-S1 levels. Dr. Pool noted no significant area of disc herniation or spinal stenosis. Dr. Pool determined that the plaintiff was suffering symptoms secondary to his degenerative disc disease with probable secondary injury to the annulus at each level. Dr. Pool recommended a course of epidural steroid injections. As of the time of hearing before the Deputy Commissioner, the plaintiff had continued to treat with his family doctor for back pain; however, no doctor had ever excused the plaintiff from work due to his back condition.
12. Dr. Pool testified that the degenerative disc disease was "significant." He further testified that the bulging or protruding discs seen on the plaintiff's MRI could be degenerative in nature. Although Dr. Pool believed the annular tears could be caused by trauma, his testimony shows, and the Full Commission finds as fact, that given the length of time that had passed, and the extensive work the plaintiff had been doing in the interim, it is unlikely that the injury to the plaintiff's back arose from the accident of September 2002. Dr. Pool further testified, and the Full Commission finds as fact, that it would be unusual for the plaintiff to not have developed more significant symptoms and pain long before he came to see Dr. Pool, if his injury had been sustained on September 19, 2002.
13. After the plaintiff left his employment with the defendant-employer, he worked on occasion for local farmers Harden Brown and James Chandler. At the hearing before the Deputy Commissioner, the plaintiff could not state exactly when or how often he worked for these employers, and could not remember how much he had been paid for the work. The plaintiff did not report these earnings to the Internal Revenue Service.
14. The greater weight of the credible evidence fails to establish that the plaintiff's ongoing complaints of back pain were caused by his accident of September 19, 2002, while in the employment of Creative Builders. The plaintiff had back problems before working for Creative Builders and suffers from degenerative disc disease. Almost eight months passed from the date of accident until the plaintiff first sought medical treatment for his back. During that time, the plaintiff was working for himself, doing extensive side jobs in roofing. When the plaintiff saw Dr. Pool in December 2003, he misrepresented his status as being unable to work consistently for the past 14 months.
15. Although the plaintiff sustained an injury by accident on September 19, 2002, the Full Commission finds that the greater weight of the evidence fails to establish a causal connection between the accident and the plaintiff's ongoing back problems. The only medical expense related to the injury by accident is the plaintiff's emergency room visit on the date of the accident.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On or about September 19, 2002, the plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The defendants are responsible for payment of the medical expenses related to the plaintiff's injury by accident on September 19, 2002, (i.e. the emergency room visit of that date, and any medications prescribed at that time), and the defendants shall pay for the same pursuant to N.C. Gen. Stat. §§ 97-2(19) and 97-25.
3. The greater weight of the evidence fails to establish that the plaintiff's ongoing back problems were caused by the injury by accident on September 19, 2002. Therefore, the defendants are not responsible for payment of ongoing medical expenses after September 19, 2002. N.C. Gen. Stat. §§ 97-2(19) and 97-25; see also Holley v. ACTS, Inc., 357 N.C. 228,581 S.E.2d 750 (2003).
4. The greater weight of the evidence fails to establish that the plaintiff has been unable to earn wages in the same or any other employment or has therefore been disabled as a result of the injury by accident on September 19, 2002. Therefore, the plaintiff's claim for compensation for wage loss must be denied. N.C. Gen. Stat. § 97-29.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay the medical expenses incurred by the plaintiff on September 19, 2002, for his emergency room visit on that same date.
2. The plaintiff's claim for further benefits under the Workers' Compensation Act must be, and is hereby, DENIED.
3. The defendants shall pay the cost.
This 24th day of February 2006.
 S/ ________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/ ____________________ PAMELA T. YOUNG COMMISSIONER